UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AJAY SINGH,

Petitioner,

v.

MARKWAYNE MULLIN, *et al.*,

Respondents.

Case No. C26-2778-MLP

ORDER

Petitioner Ajay Singh, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging his immigration detention by the Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Dkt. # 1.) He contends that his redetention, after having been conditionally released into the United States years prior, without first receiving pre-deprivation notice and an opportunity to challenge the bases for his redetention, violated his due process rights under the Fifth Amendment. (*Id.*, ¶¶ 7-9, 62-64.) He seeks immediate release and injunctive relief related to redetention or, in the alternative, a hearing within seven days. (*Id.* at 15-16.)

Respondents filed a return (dkt. # 5), supported by a sworn declaration from ICE Deportation Officer Gabriel Arambula III (dkt. # 6) and an unsworn declaration from their counsel, Lawrence Van Daley (dkt. # 7). Petitioner filed a traverse (dkt. # 9) together with a notice that he has submitted a motion to reopen his immigration proceedings (dkt. # 8). The Court provided Respondents an opportunity to file a surreply related to the new development of Petitioner's motion to reopen. (Dkt. # 10.) Respondents did not file an optional surreply. Having considered the parties' submissions, the record, and the governing law, the Court GRANTS in part the petition (dkt. # 1).[1]

## I. BACKGROUND

Petitioner is a citizen of India who entered the United States without inspection on December 1, 2017, near Otay Mesa, California, and was apprehended by the United States Border Patrol. (Dkt. # 1, ¶¶ 21-23; Arambula Decl., ¶¶ 3-4.) Petitioner was initially processed for expedited removal under 8 U.S.C. § 1225, but he expressed a fear of return to India and was determined to have a credible fear. (Dkt. # 1, ¶¶ 23-24; Arambula Decl., ¶¶ 4-8.) On January 9, 2018, the ICE Office of Removal Operations ("ERO") charged Petitioner with removability under 8 U.S.C. § 1182(a)(6)(A)(i). (Dkt. # 1, ¶ 25; Arambula Decl., ¶ 9.) Petitioner was released on bond on February 14, 2018. (Dkt. # 1, ¶ 26; Arambula Decl., ¶ 11.)

Petitioner moved to Indiana and applied, through counsel, for asylum, withholding of removal, and protection under the Convention Against Torture. (Dkt. # 1, ¶ 27.) He kept his address updated with the Immigration Court. (*Id.*, ¶ 29.)

In August 2021, Petitioner was arrested in Indiana and convicted of operating a motor vehicle while intoxicated. (Arambula Decl., ¶ 12.) In March 2023, he was arrested for a

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 4.)

probation order violation, and on July 21, 2023, he was arrested for failure to appear, but the record does not indicate he was convicted of either charge. (*Id.*, ¶¶ 13-14.)

On February 13, 2023, Petitioner's counsel moved to withdraw from representation in Petitioner's immigration proceedings. (Dkt. # 1, ¶ 30.) On July 26, 2023, an Immigration Judge issued an *in absentia* order of removal to India. (*Id.*, ¶ 31; Arambula Decl., ¶ 15; Van Daley Decl., Ex. 1.) Petitioner contends he was absent because he was in State custody on the failure to appear charge. (Dkt. # 9 at 7 (citing dkt. # 8).)

In August 2024, DHS issued a notice to the bond obligor, Prince Golen, that the bond had been breached. (Arambula Decl., ¶ 17; Van Daley Decl., Ex. 3.)

On July 17, 2026, ERO encountered Petitioner and arrested him "during a targeted enforcement operation in Tacoma, Washington." (Van Daley Decl., Ex. 4 at 3.) DHS then issued him a Form I-200, "Warrant for Arrest of [Noncitizen]." (Arambula Decl., ¶ 18; Van Daley Decl., Ex. 5.) Officer Arambula asserts he was arrested "[a]s Petitioner was under a final order of removal" (Arambula Decl., ¶ 18), but the warrant only states that he "either lacks immigration status or notwithstanding such status is removable under U.S. immigration law[.]" (Van Daley Decl., Ex. 5.) Petitioner was transferred to NWIPC. (*See id.*, Ex. 4 at 5.)

Petitioner filed the instant petition on August 5, 2026. (Dkt. # 1.) On August 24, 2026, Petitioner submitted a motion to reopen his immigration proceedings, seeking recission of his *in absentia* removal order, to the Immigration Court in Chicago. (Dkt. # 8.)

## II. DISCUSSION

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678,

687 (2001). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

The parties agree that Petitioner's detention is governed by 8 U.S.C. § 1231(a)(6), which authorizes discretionary detention after expiration of the 90-day removal period following a final removal order.[2] (*See* dkt. # 5 at 1.) Respondents contend that Petitioner's detention is authorized because his removal to India is reasonably foreseeable. (Dkt. # 5 at 6-7.) Respondents recognize, however, that this Court and others in this District have held that discretionary revocation of release requires pre-deprivation due process, even for a noncitizen subject to a final removal order. *See, e.g.*, *Vang v. Scott*, Case No. C26-690, dkt. # 19 at 5 (W.D. Wash. Mar. 30, 2026) (citing *Khim v. Bondi*, 2025 WL 3653724, at *4 (W.D. Wash. Dec. 17, 2025); *Wana v. Bondi*, 2025 WL 3628634, at *4-5 (W.D. Wash. Dec. 15, 2025)).

**A. Due Process**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07

---

[2] Respondents asserted that Petitioner was subject to "an unchallenged final order of removal[,]" which was accurate at the time their return was filed. (Dkt. # 5 at 7.) Petitioner has now mounted a challenge through his motion to reopen, however. (Dkt. # 8.)

(9th Cir. 2022); *see E.A. T.-B. v. Wamsley*, 795 F. Supp.3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

Respondents acknowledge Petitioner's significant liberty interest but argue it is "substantially diminished" because he was ordered removed *in absentia* and did not seek to reopen the order. (Dkt. # 5 at 8.) Petitioner has now filed a motion to reopen the removal order, however, and Respondents did not take the opportunity the Court offered to respond to that development. (Dkt. ## 8, 10.) The Supreme Court has repeatedly recognized that "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp.3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) (citing, *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). The first *Mathews* factor weighs in Petitioner's favor.

The risk of erroneous deprivation was high and additional safeguards would have been valuable. Respondents argue that the administrative review procedures of 8 C.F.R. § 241.1, which "require an individualized assessment" as well as notice and an opportunity to submit information, provided sufficient procedure. (Dkt. # 5 at 9.) The record does not show that these procedures were followed, however. Petitioner states in his verified petition that he received no written notice of the reasons for detention and no hearing before a neutral decisionmaker prior to redetention. (Dkt. # 1, ¶¶ 34-35.)

Respondents next argue that Petitioner's 2021 conviction for operating a motor vehicle while intoxicated was "relevant" to an assessment of danger to the community. (Dkt. # 5 at 9.) They cite a case where a "new criminal charge" of assault and battery "could reasonably be seen as presenting an urgency requiring arrest and detention before a hearing." *Quinonez Torres v. Hermosillo*, 2026 WL 547591, at *8-9 (W.D. Wash. Feb. 23, 2026). The situation here, with a

five-year-old charge, adjudicated prior to even the removal order, is not comparable. Respondents can show no urgency that would justify forgoing pre-deprivation process based on a years-old conviction. And while the conviction may be relevant to an individualized assessment, the record before the Court indicates no such assessment occurred here.

Respondents also contend Petitioner's failure to appear at his 2023 Immigration Court hearing, 2024 breach of his bond, and continuing to abscond for two years constitutes strong evidence of flight risk. (Dkt. # 5 at 10.) Petitioner contends he was unable to appear in the 2023 proceeding because he was in state custody, there is no evidence he received the 2024 bond breach notice, and he has lived openly in the community for years. (Dkt. # 9 at 3, 8; *see* dkt. # 1, ¶¶ 3, 42.) Again, these disputed facts are relevant to an individualized assessment that did not occur, demonstrating the value of additional procedures. The Court concludes the second *Mathews* factor favors Petitioner.

Third, although the government has legitimate interests in enforcing the immigration laws and ensuring appearance at proceedings, Respondents identify no concrete way in which providing a short, pre-deprivation custody hearing before revoking release would materially impede those interests. Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden of such hearings modest relative to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp.3d at 1324; *Ortega v. Bonnar*, 415 F. Supp.3d 963, 970 (N.D. Cal. 2019). On this record, Respondents have not shown exigent circumstances—such as an immediate, specific danger or imminent flight—that would make pre-deprivation process impracticable. The third *Mathews* factor therefore also favors Petitioner.

Balancing the *Mathews* factors, the Court concludes that Respondents' redetention of Petitioner was unlawful. Habeas relief is therefore warranted. Release is the appropriate and constitutionally mandated remedy. This conclusion aligns with a broad consensus among district courts nationwide. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp.3d at 1324; *Zhu v. Genalo*, 798 F. Supp.3d 400, 415 (S.D.N.Y. 2025).

**B. Injunctive Relief**

Petitioner further seeks a permanent injunction barring any future redetention without notice and a hearing before a neutral decisionmaker prior to redetention. (Dkt. # 1 at 15.) A permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003); *see Torres v. Hermosillo*, 2026 WL 145715, at *8 (W.D. Wash. Jan. 20, 2026). The record shows no specific, real, and immediate threat that Petitioner will again be redetained without due process. His request for permanent injunctive relief is therefore denied.

## III. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

(a) Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and

(b) Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

(2) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal

Access to Justice Act, 28 U.S.C. § 2412. The parties are reminded of the meet-and-confer requirement under this Court's chambers procedures.

Dated this 9th day of September, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge